UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-02285

FRED NEKOUEE, individually, :
:
          Plaintiff, :
:
vs. :
:
SAFEWAY INC., a Delaware corporation, :
:
          Defendant. :
_____/

## COMPLAINT
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf as a mobility impaired individual (sometimes referred to as "Plaintiff"), hereby sues the Defendant, SAFEWAY INC., a Delaware corporation (sometimes referred to as "Defendant"), for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1. Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2. Defendant's property, the Safeway grocery store and parking lot are located at and near 1050 Ken Pratt Boulevard, Longmont, Colorado 80501, in Boulder County ("Safeway").

3. Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of the property. The Defendant's property and store are located in and do business within this judicial district.

4. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given

original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.  See also 28 U.S.C. § 2201 and § 2202.

5. Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA, 42 U.S.C. § 12181(7)(E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

6. Safeway is a place of public accommodation.

7. Defendant is responsible for complying with the obligations of the ADA.

8. Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis, has weak limbs, and requires the use of a wheelchair for mobility.

9. Mr. Nekouee travels to the Longmont-Firestone area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

10. Fred Nekouee has visited the property which forms the basis of this lawsuit on July 31, 2018, September 30, 2018 and on May 8, 2019, and he bought goods and sought to avail himself of the goods and services at Safeway on such dates.

11. Fred Nekouee attended a heavy equipment auction in the area on October 3, 2018, and he visited Rocky Mountain National Park on a day trip on October 2, 2018.

12. Fred Nekouee plans to return to the property to avail himself of the goods and services offered to the public at the property.

13. The Plaintiff has definite plans to return to the area and to Safeway, in late September or early October of 2019.

14. Safeway is close to the hotels he stays at in the area and is close to the heavy equipment auction and dealerships he visits.

15. The Plaintiff likes to take groceries back to his hotel.

16. The Plaintiff likes the grocery items and fruit at Safeway.

17. The Plaintiff plans to return to buy groceries at Safeway again.

18. For the reasons set forth in paragraphs 9-17 and 28, Fred Nekouee plans to return to Safeway.

19. The Plaintiff has encountered architectural barriers at the subject property.

20. The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability to access the property, and have impaired his use of the restrooms in Safeway.

21. The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

22. The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

23. Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

24. On his visit to Safeway, the Plaintiff encountered slopes in its parking lot steeper than 1:48 (2%) and that were also steeper than 3.1%.

25. The Plaintiff encountered and observed barriers to access the men's restroom in Safeway; and so, he also tried to use the women's restroom in Safeway, in which women's restroom he also encountered and observed barriers to access.

26. The Plaintiff is deterred from visiting Safeway even though he enjoys its groceries, because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

27. Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 31 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

28. Fred Nekouee desires to visit Safeway not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

29. The Defendant has discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

30. The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

31. Preliminary inspections of Safeway have shown that violations of the ADA exist.

32. The descriptions of the physical conditions are accurate in each romanette (i) in each lettered subparagraph of paragraph 33 of this Complaint.

33. The violations of the ADA that Fred Nekouee personally encountered or observed

during his visits to Safeway include, but are not limited to:

**PARKING**

a. (i) In the parking lot, the front section of the parking space for disabled patrons (closer to the upright sign) in front of Safeway shown in the photograph below is not level and has a running slope that is steeper than 1:48 (2%) and steeper than 3.1%. (ii) The front section of this parking space is not level and has a running slope steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 502.4. (iii) In his wheelchair, the Plaintiff encountered this steep running slope in this parking space, and it made his wheelchair unstable. (iv) The action required to reduce the slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.



b. (i) In the parking lot, the front section of the parking space for disabled patrons with van access in front of Safeway shown in the photograph below has a running slope and a cross slope that are both steeper than 1:48 (2%) and steeper than 3.1%. (ii) The front section of this parking space has a running slope and cross slope that are both steeper than 1:48 (2%) and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 502.4. (iii) In his wheelchair, the Plaintiff encountered the slopes in this parking space and they made his wheelchair unstable. (iv) The action required to reduce the slopes of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.



c. (i) In the parking lot, the front section of the parking space for disabled patrons (oriented toward the closed end of this parking space) with van access in front of Safeway is not level and has a cross slope that is steeper than 1:48 (2%) and steeper than 3.1%. (ii)

The front section of this parking space has a cross slope that is steeper than 1:48 (2%) and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) In is wheelchair, the Plaintiff encountered this steep cross slope and it made it difficult for him to unload from and load back into his vehicle.   (iv) The action required to reduce the slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

    d.   (i) In the parking lot, the front section of the parking space (oriented closer to the upright sign) for disabled patrons with van access in front of Safeway shown in the photograph below is not level and has a cross slope that is steeper than 1:48 (2% and steeper than 3.1%.   (ii) The front section of this parking space has a cross slope that is steeper than 1:48 (2%) and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered this steep cross slope in this parking space and it made his wheelchair unstable.   (iv) The action required to reduce the slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.



**SAFEWAY INTERIOR SERVICE AREA**

e.  (i) In Safeway, the dispenser of the lottery machine is higher than 48 inches above the floor.  (ii) The dispenser of this lottery machine is about 54 inches above the finish floor and higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.2.  (iii) The Plaintiff observed the height of this dispenser above the floor, and it deters him from visiting Safeway.  (iv) The action required to reduce the height of this machine or to replace it is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN SAFEWAY**

f.  (i) The force needed to open the entrance door to the men's restroom door in

Safeway is more than 5 pounds.  (ii) The force needed to open this door is about 9 pounds and greater than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.  (iii) Due to the force necessary to open this door, the Plaintiff required assistance to open this door and to enter the men's restroom.  (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

g. (i) As shown in the photograph below, the men's restroom in Safeway does not have signage with the international symbol of accessibility.  (ii) This lack of signage with the international symbol of accessibility is in violation of Federal Law 2019, ADAAG § 703.7.2.1.  (iii) The Plaintiff observed this lack of signage and it deters him from shopping at Safeway.  (iv) The action required to install signage with the international symbol of accessibility is easily accomplishable and able to be carried out without much difficulty or expense.



h.   (i) In the men's restroom in Safeway, the operation of the accessible toilet compartment door latch requires tight grasping and pinching.  (ii) The operation of the accessible toilet compartment door latch requires tight grasping and pinching, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.  (iii) The Plaintiff tried but could not operate this door latch with a closed fist or loose grip.  (iv) The action required to replace this door latch is easily accomplishable and able to be carried out without much difficulty or expense.

i.   (i) In the men's restroom in Safeway, a door pull is not provided on both sides of the door near the latch to the accessible toilet compartment.  (ii) A door pull is not provided on both sides of the door near the latch to the accessible toilet compartment, in

violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of a door pull on both sides of the door, the Plaintiff had difficulty operating the door.   (iv) The action required to install a door pull on both sides of this door is easily accomplishable and able to be carried out without much difficulty or expense.

j.   (i) In the men's restroom in Safeway, the side wall grab bar does not extend at least 54 inches from the rear wall.   (ii) This side wall grab bar only extends about 49 inches from the rear wall and not a minimum of 54 inches from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to the lack of adequate extension from the rear wall, the Plaintiff had difficulty using this side wall grab bar to transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to replace this side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

k.   (i) In the men's restroom in Safeway, the space between the rear wall grab bar and the plumbing wall cover shown in the photographs below is less than 1.5 inches.   (ii) The space between the rear wall grab bar and the plumbing wall cover is about 0.75 inches and less than the required spacing of 1.5 inches, in violation of Federal Law 2010, ADAAG § 609.3.   (iii) Due to the location of this plumbing wall cover, the Plaintiff had difficulty using the rear wall grab bar to transfer himself from his wheelchair to the toilet.   (iv) The action required to recess this plumbing wall cover is easily accomplishable and able to be carried out without much difficulty or expense.





l. (i) In the men's restroom in Safeway, the water supply and drain pipes under the sink are not insulated. (ii) As shown in the photograph below, the water supply and drain pipes under this sink in the men's restroom in Safeway are not insulated, in violation of Federal Law 2010, ADAAG § 606.5. (iii) Due to this lack of insulation, the Plaintiff risked skin burns and injury to his legs when he sued this sink. (iv) The action required to insulate the water supply and drain pipes under this sink is easily accomplishable and

able to be carried out without much difficulty or expense.



m.    (i) In the men's restroom in Safeway, the toilet paper dispenser dispenses toilet paper at a position whose centerline is not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of this toilet paper dispenser is about 12 inches from the front of the toilet and not between a minimum of 7 inches and a maximum of 9 inches from the front of the toilet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of this toilet paper dispenser and the location of where it dispenses toilet paper, the Plaintiff could not reach toilet paper from a normal sitting position on the toilet.   (iv) The action required to replace this toilet paper dispenser with an ADA compliant dispenser and to place it in the proper location is easily accomplishable able to be carried out without much difficulty or expense.

13

n.     (i) In the men's restroom in Safeway, the liquid soap dispenser is higher than 48 inches above the floor.   (ii) This liquid soap dispenser is mounted at about 58 inches above the finish floor and higher than 48 inches above the finish floor, and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) From his wheelchair, the Plaintiff could not reach this liquid soap dispenser to obtain soap.   (iv) The action required to relocate this liquid soap dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

**WOMEN'S RESTROOM IN SAFEWAY**

o.     (i) In the women's restroom in Safeway, the operation of the accessible toilet compartment door latch requires tight grasping and pinching.   (ii) The operation of the accessible toilet compartment door latch requires tight grasping and pinching, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   (iii) The Plaintiff tried but could not operate this door latch with a closed fist or loose grip.   (iv) The action required to replace this door latch is easily accomplishable and able to be carried out without much difficulty or expense.

p.     (i) In the women's restroom in Safeway, a door pull is not provided on both sides of the door near the latch to the accessible toilet compartment.   (ii) A door pull is not provided on both sides of this door near the latch to the accessible toilet compartment, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of a door pull on both sides of this door, the Plaintiff had difficulty operating the door.   (iv) The action required to install a door pull on both sides of this door is easily accomplishable and able to be carried out without much difficulty or expense.

q.     (i) In the women's restroom in Safeway, the side wall grab bar does not extend

at least 54 inches from the rear wall.  (ii) This side wall grab bar only extends about 49 inches from the rear wall and not a minimum of 54 inches from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.  (iii) Due to the lack of adequate extension from the rear wall, the Plaintiff had difficulty using this side wall grab bar to transfer himself from his wheelchair to the toilet an back again.  (iv) The action required to replace this side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

 r. (i) In the women's restroom in Safeway, the water supply and drain pipes under the sink are not fully insulated.  (ii) The water supply and drain pipes under the sink in the women's restroom in Safeway are not fully insulated, in violation of Federal Law 2010, ADAAG § 606.5.  (iii) Due to this lack of insulation, the Plaintiff risked skin burns and injury to his legs when he sued this sink.  (iv) The action required to fully insulate the water supply and drain pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.

 s. (i) In the women's restroom in Safeway, the toilet paper dispenser dispenses toilet paper at a position whose centerline is not between 7 and 9 inches from the front of the toilet.  (ii) The centerline of this toilet paper dispenser is about 11 inches from the front of the toilet and not between a minimum of 7 inches and a maximum of 9 inches from the front of the toilet, in violation of Federal Law 2010, ADAAG § 604.7.  (iii) Due to the location of this toilet paper dispenser and the location of where it dispenses toilet paper, at the time about 17 inches away from the front of the toilet, the Plaintiff could not reach toilet paper from a normal sitting position on the toilet.  (iv) The action required to replace this toilet paper dispenser with an ADA compliant dispenser and to place it in the proper

location is easily accomplishable able to be carried out without much difficulty or expense.

  t. (i) In the women's restroom in Safeway, the operation of the twist lever on the paper towel dispenser requires tight grasping, pinching or twisting of the wrist. (ii) The operation of the twist lever on this paper towel dispenser requires tight grasping, pinching or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7. (iii) The Plaintiff tried but could not operate the twist lever to this paper towel dispenser with a closed fist or loose grip and had difficulty reaching it from his wheelchair because the clear floor space in front of it was blocked. (iv) The action required to replace this paper towel dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

  34. All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

  35. The discriminatory violations described in paragraph 33 are not an exclusive list of the Defendants' ADA violations. Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.

  36. The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's building and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above. The individual Plaintiff, and all others similarly situated, will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

37. Defendant has discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

38. Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

39. Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

40. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

41. Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals

who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facilities are ones which were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

42. Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less). All other conditions precedent have been met by Plaintiff or waived by the Defendant.

43. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Safeway and the adjoining parking lot to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a. The Court issue a Declaratory Judgment that determines that the Defendant at the commencement of the subject lawsuit are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b. Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges,

advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

    c.    An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

    d.    Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze_____
Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*